**Walter HARPER, Plaintiff,**

v.

**GENERAL GROCER COMPANY, Defendant.**

**No. 76–976C(4).**

United States District Court, E. D. Missouri, E. D.

March 31, 1978.

514

Doris G. Black, Gretchen D. Huston, EEOC, St. Louis, Mo., for plaintiff.

Stephen M. Hereford, Herbert E. Bryant, Clayton, Mo., for defendant.

## MEMORANDUM

FILIPPINE, District Judge.

This matter is before the Court for a ruling on the merits following a trial to the Court on alleged violations of 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. After consideration of the matter, the Court makes the following findings of fact and conclusions of law as set forth in the memorandum opinion below.

Plaintiff, Walter Harper, is a black citizen of the United States residing in the City of St. Louis, Missouri. Defendant, General Grocer Company, a corporation duly organized and existing under the laws of the State of Missouri, is an employer within the meaning of 42 U.S.C. § 2000e *et seq.* Plaintiff has complied with all procedural prerequisites so that the Court has jurisdiction of this matter by virtue of 42 U.S.C. § 1981, 42 U.S.C. § 2000e *et seq.*, and 28 U.S.C. § 1343(4).

Plaintiff applied for a job with General Grocer in September, 1968, as a "regular" or permanent employee. He was informed at that time that the only openings available were for casual employees, who worked only when they were needed. Plaintiff was hired in that capacity and worked as an order filler.

Plaintiff in the course of his employment indicated to his superiors on several occasions that he wished to become a permanent employee, but was told each time that no regular positions were available.

Plaintiff has made a prima facie case of racial discrimination by establishing that he belongs to a racial minority, that he sought regular employment and was not hired, and that after his request for regular employment, others were hired in that capacity. *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The burden has thus shifted to the defendant to show that plaintiff was not hired as a regular employee for reasons other than his race. *McDonnell Douglas,* supra.

Prior to the signing of a Collective Bargaining Agreement between defendant and the Teamsters Union, which covered the period of June 1, 1973 through May 31, 1976, there was no provision for job seniority among the casual workers pool. Attendance and other records were not kept on these employees until January, 1974, because of the sporadic nature of their employment, the availability of employees, and nature of the Company's workload. The Collective Bargaining Agreement, however, provided that a casual employee seniority list would be kept by the Company, with places on the list awarded in the order that applications for regular employment were received.

The brunt of plaintiff's complaint is that defendant failed to inform him of these application procedures in order to deny him seniority as to regular employment hire. Plaintiff submitted his application for regular employment on November 5, 1973, and was ranked fourth on the list. Three white casuals, who, according to plaintiff, began their employment with defendant after plaintiff did, made application on September 4, 1973, November 1, 1973, and November 2, 1973, respectively, and were placed in that order on the Casual Employees Seniority List.

Defendant has clearly established by testimony on its behalf that it was not the responsibility of the Company to apprise union members of the terms of the agree-

ment and procedures thereunder. The evidence at trial indicates that the Union, of which plaintiff was a member, was quite insistent that the Company not advise or explain union contracts to union members. Defendant also showed that union meetings were open to casuals, that shop stewards were available to explain the union-management agreement, and that casuals were permitted to file a complaint through a grievance procedure, which plaintiff did not do. Accordingly, if in fact plaintiff was not timely advised of the necessity of making a formal application for permanent employment, it was not the legal responsibility of defendant.

Defendant produced evidence at trial which indicated that seven regular employees were hired from September, 1968, through December, 1969. No evidence was produced by either party as to the qualifications, seniority, or race of these hirees because of the absence of records kept as to casual workers prior to January, 1974. Records reveal that no regular employees were hired from December, 1969, until March, 1974.

Additionally, evidence at trial established that plaintiff was involved in an unauthorized work stoppage in 1971, and was terminated for a period of one or two months. He was rehired—the only one of this group of ten or twelve blacks and whites—only after the intercession of his father, who had worked for the defendant Company for some time. Defendant produced testimony that plaintiff left the Company for four months in order to start a food business with his family some time in 1972 or 1973. Plaintiff's father testified this food business began in March, 1973.

Other than the testimony of the plaintiff that the three casual employees ahead of him on the seniority list were hired after him, there is no evidence of their seniority, or lack of it, in relation to the plaintiff. The lack of records or other evidence makes it impossible for the Court to ascertain whether plaintiff was in fact senior to those three ahead of him on the seniority list. The interruption of plaintiff's tenure with the Company further clouds the issue of seniority.

■ The lack of pertinent information relative to the seven employees hired as regulars during 1968–69, and relative to the three employees placed above plaintiff on the casual seniority list, together with the procedures authorized by the 1973 Collective Bargaining Agreement, which were followed by defendant, convince this Court that there was no discriminatory action in plaintiff's being placed fourth on the casual seniority list.

The Court now turns to plaintiff's second ground for discrimination; that of his discharge. It is plaintiff's charge that he was terminated because of his race. Defendant claims that plaintiff was fired because of his poor attendance record and his unavailability for work.

■ The Court finds that plaintiff has made a prima facie case as to a discriminatory discharge by showing that he was within the class of persons protected by Title VII; that he was fired without just cause, and that the defendant hired regular employees after his discharge. *McDonnell Douglas Company v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Potter v. Goodwill Industries of Cleveland,* 518 F.2d 864 (6th Cir. 1975). Plaintiff presented testimony that no records were kept on casual employees until January, 1974, and that no complaints about his performance or attendance had been made until he had been placed on the Casual Employees Seniority List in November, 1973. Plaintiff's supervisor, John Herminghaus, testified that for the most part plaintiff was a good worker, and that until the latter part of 1973, he was generally on time for work. Plaintiff also testified that his employment record was no worse than that of white employee Jack Driskill. Additionally, evidence was produced that after a four-year lull, defendant had hired three workers from the Casual Employees Seniority List as regular employees during the early months of 1974, so that as of March 16, 1974, plaintiff was first on the Casual Employees Seniority List.

The Court finds that this evidence was sufficient to shift the burden of proof to defendant to show that its refusal to further employ plaintiff as a casual worker was for just cause. Defendant offers some testimony contrary to that of plaintiff and his witnesses, but relies principally on plaintiff's attendance record (Defendant's Exhibit A) kept by the Company as of January, 1974.

The events precipitating plaintiff's discharge occurred in June, 1974, when plaintiff had advanced to first place on the Casual Employees Seniority List. Plaintiff was ill with the flu during the first week of June. As the attendance record indicates, he called in then to inform defendant of his unavailability for work.

It is the testimony of the plaintiff and his wife that plaintiff, as was required, called in every day in the weeks of June 10 and June 17, 1974. He was told by his supervisor, Richard Overmark, that there was no work available because business was slow. On June 24, plaintiff's evidence is that he again called in but was told by Overmark that he was no longer needed by the Company. Overmark offered to give him a good recommendation.

It is also the testimony of plaintiff and his wife that plaintiff was not sick in the last week of May, but called in every day and was told there was no work.

Plaintiff's attendance record shows plaintiff as ill during the last week of May and as not having called in at all during the weeks of June 10, June 17, and June 24. The Court finds it unrealistic to believe that plaintiff, who by this time had advanced to first place on the Casual Employees Seniority List, would suddenly make himself unavailable for work.

The Court cannot accept the attendance records as probative because of their unreliability. Defendant's Exhibit A and what purports to be a true and correct copy thereof filed with the Court by Defendant as an exhibit to its Request for Admissions significantly differ from each other. There are additions in the exhibit to the Request for Admissions that are not present in De-

fendant's Exhibit A admitted at trial. Also, the attendance record of one Jack Driskill, admitted as Defendant's Exhibit C, as well as the record of the plaintiff, reveal further inaccuracies in the supposed daily record keeping. The legend to the record keys the use of certain letters to indicate specific reasons for absence from work. There are used in the records letters that have no definition in the legend. Additionally, in the space for remarks to the side of the daily entries for January, February, and March, 1974, all time from work on Driskill's record is added and designated "sick time" regardless of what the daily notations indicate.

The Court also finds significant the testimony of John Herminghaus, plaintiff's supervisor until late April or early May of 1974. Herminghaus claims that at some time during June, he called the plaintiff and spoke to plaintiff's wife to discover the whereabouts of the plaintiff. Plaintiff's wife denies ever having spoken to Herminghaus. Also noteworthy is the fact that at the time it appears that Herminghaus was allegedly calling plaintiff or his family he was no longer plaintiff's supervisor because he had been transferred to another shift.

On cross examination, Herminghaus modified his testimony to state that the date of the phone call to plaintiff's home was the day that plaintiff had some teeth pulled, which on the record is marked as May 9–10. While Exhibit A shows plaintiff as "absent sick" on May 9--10, it is the testimony of plaintiff and his wife that plaintiff was absent from work because of the death of his wife's brother. There is, however, a notation on said Exhibit A on April 11 of a death in the family.

The Court finds the inconsistencies and inaccuracies of the attendance records kept by defendant sufficient to diminish their credibility. The unreliability of these records to establish firing for cause, the fact that at the time of plaintiff's firing in late June, 1974, plaintiff had advanced to first place on the Casual Employees Seniority List, and consideration of all testimony,

lead this Court to conclude that plaintiff was not discharged for cause, but because of his race, in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 2000e *et seq.* Plaintiff, therefore, shall have judgment against the defendant, together with reasonable attorney's fees and all costs incurred in this action.

Plaintiff in his prayer for relief did not specifically request reinstatement, although his complaint as a whole is addressed to this remedy, and plaintiff did seek any equitable relief the Court might find appropriate. It is within the sound discretion of the Court to fashion a remedy which will make plaintiff most nearly whole after sustaining injuries resulting from racial discrimination, and which will further the aims of Title VII. *Franks v. Bowman Transportation Company, Inc.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Albermarle Paper Company v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Accordingly, the Court orders that defendant shall offer to reinstate plaintiff to his former casual employee status. If plaintiff accepts the position, he shall be placed first on the Casual Employees Seniority List. Defendant shall offer to plaintiff the first regular employee position that becomes available and to which he would be entitled by virtue of being first on the Casual Employees Seniority List. Additionally, defendant is also enjoined from any further discrimination against plaintiff on the basis of race.

Plaintiff requested in his prayer, but produced at trial no evidence of any monetary loss, including back pay. The Court cannot speculate as to monetary damages sustained by plaintiff.

. The Court retains jurisdiction of this matter for the purpose of ascertaining attorney's fees.